**SO ORDERED.**

**SIGNED this 11 day of March, 2013.**

_____
Randy D. Doub
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

IN RE:

| | |
|---|---|
| C.R. PEELE CONSTRUCTION CO., INC., | CHAPTER 11 |
| | CASE NO. 10-05232-8-RDD |
| DEBTOR | |

_____

| | |
|---|---|
| C.R. PEELE CONSTRUCTION CO., INC., | ADVERSARY PROCEEDING NO. |
| | 12-00138-8-RDD |
| PLAINTIFF | |
| v. | |
| DTC ENGINEERS & CONSTRUCTORS, LLC, | |
| THE HANOVER INSURANCE COMPANY, | |
| DEFENDANTS | |

## OPINION

Pending before the Court is Defendants' Motion to Dismiss Adversary Proceeding filed September 28, 2012. On November 3, 2012, Defendants filed a Memorandum of Law in Support of Motion to Dismiss. The Response to Defendants' Motion to Dismiss was filed by Debtor-Plaintiff on November 5, 2012. A hearing was conducted on the matter on January 17, 2013, in New Bern, North Carolina, and the matter was taken under advisement.

1

## BACKGROUND

C.R. Peele Construction Co., Inc., ("Plaintiff") filed its respective Chapter 11 bankruptcy petition on June 30, 2010. The Court entered an Order confirming Plaintiff's Chapter 11 Plan of Reorganization on April 18, 2012. Plaintiff subsequently filed its Complaint in this adversary proceeding on June 29, 2012. Plaintiff, whose business principally involves contracts on construction projects, alleges it was involved in a first-tier subcontract on a federal construction project. Plaintiff entered into the subcontract agreement on November 3, 2008. DTC Engineers & Constructors, LLC, ("DTC") was the general contractor on the project, and The Hanover Insurance Company ("Hanover") acted as the project's surety pursuant to a construction payment bond.

The Complaint alleges further that Plaintiff began work under the terms of the agreement in November 2008 in Craven County, North Carolina. Work on the contract continued until its termination on September 17, 2009. Plaintiff alleges $256,783.35 in properly invoiced progress payments remains unpaid by DTC. Hanover, as surety for DTC, likewise has not paid on the invoices. Plaintiff asserts breach of contract against DTC in its Complaint and requests relief in the form of restitution, quantum meruit, and unjust enrichment. Additionally, Plaintiff asserts breach of the payment bond against Hanover.

As grounds for their Motion to Dismiss the adversary proceeding, Defendants maintain the Bankruptcy Court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), made applicable to adversary proceedings under Fed. R. Bankr. P. 7012(b). In support of the defense, Defendants assert there are "no applicable grounds for subject matter jurisdiction under 28 U.S.C. § 1334." Defs.' Mot. to Dismiss. Plaintiff asserts, by contrast, the Bankruptcy Court

retains jurisdiction and asks the Court to hear the matter on the merits. In the alternative, Plaintiff requests a referral of the matter to federal district court.

## DISCUSSION

**A. Subject Matter Jurisdiction.** Sections 1334(b), 157(a), and (d) of Title 28 are central in assessing the subject matter jurisdiction of this Court with respect to Plaintiff's cause of action. Section 1334(b) states that "the district court shall have original but *not exclusive jurisdiction* of all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). Section 157(a) adds that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings *arising under* title 11 or *arising in* or *related to* a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a) (emphasis added).[1] A matter, therefore, is within the jurisdiction of this Court if it is "arising under," "arising in," or "related to" the corresponding bankruptcy case. Upon a determination that the Bankruptcy Court lacks subject matter jurisdiction, § 157(d) provides that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

Case law enumerates these jurisdictional concepts further. *In re Newell*, 424 B.R. 730 (Bankr. E.D.N.C. 2010), is helpful in illustrating their import:

> A proceeding *arises under* Title 11 if it invokes a substantive right created by the Bankruptcy Code. Proceedings *arising in* a case under Title 11 are those that are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy [case].

---

[1] Pursuant to § 157(a), the General Order of Reference of the United States District Court for the Eastern District of North Carolina, dated August 3, 1984, refers to the Bankruptcy Court "any and all cases under Title 11 and any and all proceedings arising under Title 11 or arising in or related to a case under Title 11."

*Id.* at 733 (internal citations and quotation marks omitted) (emphasis added). The phrases "arising under" and "arising in" directly relate to matters that either have their genesis in the provisions of Title 11 or would not exist apart from it. *See In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987).

When a proceeding fails to "arise under" or "arise in" Title 11, the Bankruptcy Court nevertheless retains jurisdiction if the proceeding is "related to" the debtor's respective bankruptcy case. The Fourth Circuit has made plain that such "related to" jurisdiction is broad in its scope. Indeed, "[t]he usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*." *In re Celotex Corp.*, 124 F.3d 619, 625 (4th Cir. 1997) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)).

**B. Confirmation and Substantial Consummation.** The expansive nature of the "related to" jurisdiction, however, turns in large measure on two important events: confirmation of a debtor's plan of reorganization and the plan's substantial consummation. *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831 (4th Cir. 2007), highlights the effect of confirmation on the "related to" jurisdiction. In that instance, the debtor brought a post-confirmation adversary proceeding against the Bank of New York for breach of contract and tortious interference. The confirmed plan included specific provisions allowing the Bankruptcy Court to retain jurisdiction concerning a prospective adversary proceeding against the bank. The liquidation of the debtor's claims against the bank would be used as a setoff against the bank's proof of claim in the debtor's respective bankruptcy case. Aside from this provision, however, the debtor's plan "provided for the satisfaction of the Debtor's obligations entirely from the postpetition rents and

4

earnings of the Debtor through the operation of its real estate," not from post-confirmation litigation proceeds. *Id.* at 834 (internal quotation marks omitted).

In this post-confirmation context, the Court of Appeals highlighted the marked contraction of the Bankruptcy Court's "related to" jurisdiction as compared to the pre-confirmation context. *Valley Historic* states that

> for "related to" jurisdiction to exist at the postconfirmation stage, the claim must affect an integral aspect of the bankruptcy process—there must be a close nexus to the bankruptcy plan or proceeding. Practically speaking, under this inquiry matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus.

*Id.* at 836–37 (internal citations and quotation marks omitted). Since the debtor's claims against the bank lacked the requisite "close nexus" to the respective bankruptcy proceeding or to the debtor's plan of reorganization, the Court could not retain jurisdiction over the matter. The Court concluded, therefore, that upon confirmation and substantial consummation, the breach of contract and tortious interference claims against the bank had "vested in the reorganized Debtor and could no longer be considered property of the estate." *Id.* at 838. The debtor's action against the bank would have to proceed in another forum.

The *Valley Historic* decision emphasizes that, in the post-confirmation setting, substantial consummation is key to assessing the Bankruptcy Court's "related to" jurisdiction. Section § 1101(2) of Title 11 defines substantial consummation as:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
> 
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
> 
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2). Each of these three elements must be established to render a debtor's plan substantially consummated. *In re Scotland Guard Servs., Inc.*, 139 B.R. 264, 265 (Bankr. D.P.R. 1991). A determination that a debtor's plan has been substantially consummated, moreover, is "a question of fact to be determined upon the circumstances of each case." *Id.* The Court in *Scotland Guard* goes on to note that substantial consummation "requires only *commencement* of the distribution of dividends to creditors which are to be made over a period of time from operating revenues." *Id.* at 266. Additionally, the Court emphasized that no bright-line "percentage of payments test" exists in the context of substantial consummation. *Id.* at 266 (citing *United States v. Novak*, 86 B.R. 625, 631 (Bankr. D.S.D. 1988)).

Finally, from a procedural standpoint, it should be noted that "it is the burden of the party alleging Bankruptcy Court jurisdiction to establish the existence of that Court's jurisdiction over the matter in dispute." *In re Chargit Inc.*, 81 B.R. 243, 274 (Bankr. S.D.N.Y. 1987). *See also Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87, 92 (2nd Cir. 1975). As an additional tool in assessing its jurisdiction, the Court may make *sua sponte* inquiries into "materials and facts outside the four corners of the pleadings without converting this Rule 12(b)(1) motion into one for summary judgment." *In re Alt. Computer Sys. Inc.*, 163 B.R. 704, 706 (Bankr. S.D.N.Y 1994).

Based on the facts in the instant case, the Court finds Plaintiff has failed to meet its burden of proof respecting substantial consummation of its confirmed plan according to the provisions of 11 U.S.C. § 1101(2) and applicable case law. At the hearing, Plaintiff supported its contention that the plan had not yet reached substantial consummation merely by stating it believed the plan of reorganization had "a ways to go." Plaintiff also asserted the plan may need further modification by this Court in the future. However, no evidence was presented as grounds

for its conclusion. Plaintiff also cited the Bankruptcy Court's familiarity with the case and overall efficient administration as a basis for retaining the Court's jurisdiction, but these factors alone are insufficient to comport with 28 U.S.C. §§ 1334(a), (b), and 157(a).

Also, a *sua sponte* review of Plaintiff's Second Amended Plan of Reorganization, ultimately approved by Order of this Court, states in its introduction that Plaintiff's reorganized business will provide the means for execution of the plan's payment provisions. It states: "The Plan contemplates a reorganization and continuation of the Debtor's business. In accordance with the Plan, the Debtor will satisfy certain creditor claims from *income earned through continued operations*." Debtor's Plan ¶ I (emphasis added). Furthermore, the plan satisfies a majority of creditor claims through sale or surrender of assets. With respect to the effectuation of the plan's provisions, neither the plan nor disclosure statement contemplates post-confirmation litigation or settlement as a means of executing the plan's class treatment.[2] The plan includes only a generic provision whereby Plaintiff reserves the right to pursue "actions to seek turnover of estate assets, *actions to recover accounts receivable*, and/or actions to invalidate setoffs." Debtor's Plan ¶ IV.I (emphasis added). Plaintiff's claims against Defendants in this matter simply do not "affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan" as required by the "close nexus" analysis of *Valley Historic*. The claims comprising this adversary proceeding are merely tangential to Plaintiff's overall reorganization.

Lastly, the Court's review of Plaintiff's post-confirmation reports for the quarters ending in June and September 2012 indicates ambiguity concerning whether substantial consummation occurred before or after the filing of the Complaint in this matter. According to the reports, all

---

[2] Neither the plan nor the disclosure statement specifically incorporate the claim against DTC and Hanover as a means necessary for execution of the plan.

the property to be surrendered to secured creditors had either been completed or was nearing completion at or around the time this adversary proceeding was filed. Additionally, a number of the monthly payment provisions to secured creditors in consideration for retained leases and installment contracts had begun at or around this time. It is unclear from the substance of these quarterly reports whether Plaintiff's plan of reorganization was substantially consummated prior to or after the commencement of this adversary proceeding. What is clear is that payments under the plan and surrender of property commenced in June or July 2012.

In sum, the Court finds the allegations in Plaintiff's adversary proceeding against Defendants fail to comport with the "close nexus" requirements of *Valley Historic*. The substance of Plaintiff's Complaint is insufficiently related to Plaintiff's plan of reorganization. Second, Plaintiff did not meet its burden in convincing the Court that the required subject matter jurisdiction exists for this Court to hear the matter. Hence, this Court no longer retains the necessary "related to" jurisdiction to adjudicate this adversary proceeding on the merits. Therefore, the Court will allow thirty (30) days from the date of the entry of this Order for Plaintiff to file with the United States District Court for the Eastern District of North Carolina a Motion to Withdraw the Reference pursuant to 28 U.S.C. § 157(d) and to set forth the subject matter jurisdictional basis for the matter to be heard by the District Court. If no Motion to Withdraw the Reference is filed within thirty (30) days of the date of this Order, this adversary proceeding shall be **DISMISSED**.

    **SO ORDERED**

**END OF DOCUMENT**